OPINION
{¶ 1} Plaintiff-appellant, First Bank of Ohio, appeals from judgments of the Franklin County Municipal Court awarding it damages and post-judgment interest at the statutory rate in two consolidated breach of contract cases brought against defendant-appellee, Jay M. Wigfield. Plaintiff assigns a single error: *Page 2 
 The Court erred by not awarding post judgment interest on the judgments at the contract rate of 25% per annum, instead ordering post judgment interest at the statutory rate of 8% per annum.
 {¶ 2} Defendant asserts two cross-assignments of error:
 FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO FIND PLAINTIFF-CROSS-APPELLEE DID NOT VIOLATE THE STATUTORY NOTICE REQUIREMENTS OF OHIO REVISED CODE § 1309.610 AND § 1309.613 AS A CONDITION PRECEDENT TO RECOVERY OF A DEFICIENCY JUDGMENT.
 SECOND ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO AWARD DEFENDANT-CROSS-APPELLANT STATUTORY DAMAGES IN ACCORDANCE WITH OHIO REVISED CODE § 1309.625 AS A RESULT OF THE NOTICE VIOLATIONS BY PLAINTIFF-CROSS-APPELLEE.
Because R.C. 1343.03(A) permits, and the parties agreed to, an interest rate exceeding the statutory post-judgment interest rate, plaintiff's assignment of error is sustained, while defendant's cross-assignments of error are overruled because plaintiff complied with the statutory notice provisions.
 {¶ 3} In April and May 2005 defendant purchased two motorcycles, a Yamaha and a Suzuki. Plaintiff provided separate loans to defendant to finance each purchase, and in turn defendant signed a "Simple Interest Note, Disclosure and Security Agreement" for each loan. As long as defendant remained current on his payments, the note on the Yamaha loan provided for an interest rate of 14.378 percent, while the Suzuki note specified a 13.229 percent interest rate. Upon default, each note converted to an interest rate of 25 percent. *Page 3 
 {¶ 4} Defendant paid installments on the notes until he was injured in a serious accident while riding the Suzuki. On June 23, 2006, plaintiff notified defendant he was in default on both loans, the notes were being accelerated, and the interest rate was increased to the 25 percent default rate. After locating both motorcycles with defendant's help, plaintiff repossessed and sold the vehicles and applied the proceeds towards the sum defendant owed. Plaintiff also received insurance proceeds for the Suzuki from plaintiff's own insurance policy and in turn credited defendant's accounts. As the notes permitted, plaintiff added to defendant's balance on the notes the expenses incurred in repossessing and selling the vehicles. Because the amount recovered from the sales and insurance proceeds failed to cover the balance due, plaintiff sued defendant for the deficiency. Defendant counterclaimed, alleging plaintiff failed to comply with the statutory notice requirements, failed to sell the vehicles in a commercially reasonable manner, and failed to properly credit defendant's accounts for recovery of the vehicles.
 {¶ 5} After a bench trial, the trial court rendered judgment for plaintiff and dismissed defendant's counterclaim with prejudice. The court awarded plaintiff $3,456.98 on the Yamaha note and $4,732.11 on the Suzuki note, plus post-judgment interest at the statutory rate of eight percent per annum on both judgments.
I. Cross-Assignments of Error {¶ 6} We first address defendant's two cross-assignments of error because, if they were sustained, plaintiff's assignment of error is moot. Defendant's first cross-assignment of error contends plaintiff failed to provide him proper notice of the time, date, and place for sale of the Yamaha, as R.C. 1309.610 and 1309.613 require. *Page 4 
 {¶ 7} Compliance with R.C. 1309.610 is a condition precedent to complete recovery of a deficiency judgment. Columbus Mtge., Inc. v.Morton, Franklin App. No 06AP-723, 2007-Ohio-3057, citing First Natl.Bank of Dennison, Inc. v. Grewell, Tuscarawas App. No. 03 AP 12 0095, 2004-Ohio-3986. While a secured party initially is not required to prove compliance with the statute, it must do so once the debtor places the secured party's compliance in issue, as defendant did in this case. Failure to comply limits the secured party's ability to recover a deficiency judgment. R.C. 1309.626(C). Specifically, R.C. 1309.626(D) assumes compliance with the statutory requirements would yield proceeds equal to the deficiency the debtor owes, unless the secured party proves otherwise. Thus, if plaintiff failed to comply with the statute, plaintiff's ability to recover a deficiency may be restricted unless plaintiff can prove its failure to comply did not impact the amount of proceeds realized from the disposition of the collateral.
 {¶ 8} As pertinent here, R.C. 1309.610 permits a secured party to dispose of collateral after default, provided that "every aspect" of the disposition is commercially reasonable. The statute allows for public or private sale, and pursuant to R.C. 1309.611 the secured party must notify the debtor before the disposal occurs. For a consumer goods transaction, R.C. 1309.614 describes the content and form of the notification, providing a sample form for each type of sale that "when completed, provides sufficient information" to comply with the notice requirement. R.C. 1309.614(B). As relevant here, R.C. 1309.614(A)(1)(a) requires the notice of disposition to include the information specified in R.C. 1309.613(A)(1). R.C. 1309.613(A)(1), in turn, mandates that the notification describe the debtor, secured party and collateral, state the method of intended disposition, inform the debtor of the right to, and the charge for, an accounting of the *Page 5 
unpaid indebtedness, and include the time and place of a public disposition "or the time after which any other disposition is to be made." R.C. 1309.613(A)(1).
 {¶ 9} Defendant contends the notice of sale plaintiff sent to defendant fails to comport with the statutory requirements because the Yamaha motorcycle was sold at a public sale, but the notice plaintiff sent failed to include the "time, place and date" for sale. Defendant also asserts the sale occurred over a month after the date indicated on the notice. As a result of the alleged defects, defendant claims he was deprived of his statutory right to protect his own interest when the collateral was sold.
 {¶ 10} Contrary to defendant's contentions, the Yamaha notice, which plaintiff introduced into evidence, meets the requirements of R.C.1309.614(B) for a private sale, except that it states the collateral will be sold "at public or private sale." It denotes defendant the debtor, names the Yamaha as the collateral, includes the account number of the loan, and except for minor typographical alterations reprints the statutory language. The notice informs defendant how to obtain additional information about the disposition, the amount he owes, and how to redeem the collateral if defendant so desired. Contact information, including toll-free phone numbers and plaintiff's office addresses, is also provided.
 {¶ 11} The Yamaha was sold after it was placed, with a "for sale" sign, on a street corner at a gas station. Such a sale is a private sale, and displaying the vehicle in a public place did not convert the sale to a public one. "The essence of a public sale is that the public is not only invited to attend and bid but also is informed when and where the sale is to be held." Lloyd's Plan, Inc. v. Brown (Iowa 1978),268 N.W.2d 192, 196. See, also, Official Comment 7 to R.C. 1309.610
(stating that "[although the term is not defined, as *Page 6 
used in this Article, a `public disposition' is one at which the price is determined after the public has had a meaningful opportunity for competitive bidding," with meaningful opportunity implying "that some form of advertisement or public notice must precede the sale [or other disposition] and that the public must have access to the sale [disposition]").
 {¶ 12} By contrast, "[a] private sale * * * is not open to the general public, usually does not occur at a preappointed time and place, and may or may not be generally advertised." Beard v. Ford Motor Credit Co.
(Ark.App.,1993), 850 S.W.2d 23, 28, citing James J. White Robert S. Summers, Uniform Commercial Code Section 27-10, at 594 (3d Ed.1988). See, also, Bank of America v. Lallana (Cal. 1998), 960 P.2d 1133, 1139;In re Bishop (C.A.4, 1973), 482 F.2d 381, 384-385. Nothing in the record indicates any form of "competitive bidding" occurred during the sales process; nor was the sale widely advertised. Under the facts present here, the sale is a private sale.
 {¶ 13} Because the collateral was sold at a private sale, plaintiff was not required to include the time and place of the sale. While the statute requires a creditor to inform the debtor of the time and place of a public disposition, the creditor must state only the "time after which" the disposition will be made for a private disposition. SeeTrustcorp Bank of Ohio v. Lytten (1990), 68 Ohio App.3d 208, 211
(holding that the analogous former version of the statute distinguished between public and private sale of repossessed collateral, requiring specificity as to time, date and place of a public sale, and reasonable notice of time after which either a private sale or other disposition of the property would be conducted). Since plaintiff's notice provided such information, it complied with the statute and is sufficient. *Page 7 
 {¶ 14} Defendant's complaint that the sale occurred after the date listed on the notice is also without merit. The statute requires that the sale occur after the date stated in the notice; as the collateral in this case was sold after the date provided, the sale complied with the statute. While the notice failed to specify whether the collateral would be sold at public or private sale, the lack of specificity did not deprive defendant of his statutory right to protect his interest in the collateral: because no public sale occurred, the mere mention of its possibility did not harm defendant. Defendant's first cross-assignment of error is overruled.
 {¶ 15} Defendant's second cross-assignment of error asserts he should have been awarded statutory damages pursuant to R.C. 1309.625 because of statutory violations in plaintiff's notice of sale. Because the notice plaintiff sent to defendant complied with statutory requirements, no violation occurred. Defendant's second cross-assignment of error is overruled.
II. Plaintiffs Assignment of Error {¶ 16} Plaintiff's assignment of error contends it should have been awarded post-judgment interest at the contract rate, not the statutory rate.
 {¶ 17} The trial court found defendant defaulted on the notes, and the court awarded plaintiff interest at the contractual post-maturity rate from default until judgment was granted on June 14, 2007. The trial court, however, concluded the judgment "purged" the default, rendering the contractual post-maturity rate inapplicable once judgment was entered. The court thus awarded plaintiff interest on the judgment at the statutory rate of eight percent. *Page 8 
 {¶ 18} Addressing interest rates applicable to judgments on instruments containing a stipulated interest rate, R.C. 1343.02 requires interest "be computed until payment is made at the rate specified in such instrument." R.C. 1343.02, however, applies only to bonds, bills, notes or other instruments enumerated in R.C. 1343.01. R.C. 1343.01, in turn, governs mortgages, business loans, and stock transactions while specifically excluding instruments "secured by household furnishings or other goods used for personal, family, or household purposes." R.C.1343.01(B)(5). The motorcycles securing the notes at issue here are personal goods. Since the notes in this case are not included under R.C.1343.01, R.C. 1343.02 does not apply. Rather, R.C. 1343.03 governs the interest rate applicable to plaintiff's judgment.
 {¶ 19} In relevant part, R.C. 1343.03(A) states that "when money becomes due and payable upon any * * * note * * *, and upon all judgments * * * of any judicial tribunal for the payment of money arising out of * * * contract or other transaction, the creditor is entitled to [statutory] interest * * *, unless a written contract provides a different rate of interest in relation to the money that becomes due and payable, in which case the creditor is entitled to interest at the rate provided in that contract." The statutory rate set forth in R.C. 1343.03(A) is simply a default rate to be charged should the parties not contract otherwise. See Ohio Valley Mall Co. v. FashionGallery, Inc. (1998), 129 Ohio App.3d 700, 704.
 {¶ 20} A judgment creditor thus is entitled to an interest rate in excess of the statutory interest rate pursuant to R.C. 1343.03(A) when (1) the parties have a written contract, and (2) that contract provides a rate of interest with respect to money that becomes due and payable.Hobart Bros. Co. v. Welding Supply Serv., Inc. (1985), *Page 9 21 Ohio App.3d 142, 144. See, also, Frenchtown Square Partnership v.Shifrin Willens, Inc. (Mar. 18, 1998), Mahoning App. No. 96 C.A. 53, citing P. W.F., Inc. v. C.S.U. Pizza, Inc. (1993), 91 Ohio App.3d 724,729. A written contract entails a writing to which both parties have assented. Id. Once a judgment is rendered, the interest rate in the contract or note will continue to govern until the amount due is paid.Ashville Bank v. Higley (Jan. 27, 1987), Pickaway App. No. 85 CA 43.
 {¶ 21} Defendant does not dispute that the parties have a written contract specifying an interest rate higher than the statutory amount: the notes provide for post-maturity interest at the rate of 25 percent per annum. According to the notes, the 25 percent interest rate accrues on the note balances not paid at maturity, including maturity by acceleration. While the rate is unquestionably high, R.C. 1109.20, effective January 1, 1997, permits banks to charge interest in loan contracts at any rate "not exceeding an annual percentage rate of twenty-five percent."
 {¶ 22} In an attempt to circumvent the statutory provisions, defendant cites Hosford v. Automatic Control Systems, Inc. (1984),14 Ohio App.3d 118, 120, contending principal owed and accruing interest merge once a judgment is issued. According to defendant, "the amount reflected in the judgment then becomes subject to the accrual of statutory interest."Hosford is distinguishable. The promissory notes in Hosford were silent on the interest rate to be assessed after default. Moreover, defendant's contentions contravene the "preference to enforcing the stipulated rate of interest contained in a contract assented to by the parties, rather than applying the statutory default rate." Capital Fund Leasing, L.L.C.v. Garfield (1999), 135 Ohio App.3d 579, 582, citing P. W.F.,Inc., supra; Ohio Sav. Bank v. Repco Electronics, Inc. (Aug. 13, 1998), Cuyahoga App. No. *Page 10 
73218; Cuff's, Inc. v. Clemmons (Oct. 13, 1994), Cuyahoga App. No. 66913; Markan v. Sawchyn (Dec. 22, 1983), Cuyahoga App. No. 46885. See, also, Ohio Valley Mall Co., supra, at 705 (holding that when parties to a written contract agree to an interest rate exceeding the statutory amount, R.C. 1343.03(A) mandates that post-judgment interest be assessed at the contractual rate).
 {¶ 23} Since R.C. 1343.03(A) enforces post-judgment interest at the contractual rate when the parties have stipulated in a written agreement to an interest rate differing from the statutory rate, the trial court erred in limiting plaintiff's award of post-judgment interest to the statutory rate. Plaintiff's assignment of error is sustained.
 {¶ 24} Having overruled defendant's two cross-assignments of error, but having sustained plaintiff's single assignment of error, we reverse the judgments of the trial court and remand for modification to reflect the interest rate the parties stipulated to in the notes subject of this action.
Judgments reversed and cases remanded with instructions.
 BROWN and KLATT, JJ., concur. *Page 1